## ETTMAN v. FEDERAL LIFE INS. CO.
### No. 588.

District Court, E. D. Missouri, E. D.

Nov. 18, 1942.

John S. Leahy and J. L. London, both of St. Louis, Mo., for plaintiff.

Wayne Ely, of St. Louis, Mo., for defendant.

COLLET, District Judge.

This cause is pending upon plaintiff's motion for judgment non obstante veredicto and upon his motion for new trial. The question of primary importance is whether certain statements made by plaintiff in his application for the policy in suit are to be considered as warranties constituting a part of the contract, or representations to be treated as only inducements to the making of the contract. If they be treated as warranties and were false it is immaterial whether plaintiff knew they were false at the time the application was made.[1] If they be mere representations, their falsity will not be a defense unless they were known to be false by plaintiff at the time they were made and were fraudulently made with intent to deceive the insurer.[2] The jury was instructed upon the theory that the statements were warranties and that if it be found that they were false it was of no moment whether plaintiff knew or did not know at the time that they were false. The verdict was for the defendant. Hence, if the Court's construction of the provisions of the policy was incorrect in this particular a new trial must follow as there was substantial evidence that plaintiff did not know the statements were false, if in fact they were.

In general terms, the statements involved were to the effect that plaintiff did not have any serious defect or disease of the eyes, had not consulted a physician concerning any disease of his eyes and had not been in any hospital or been under examination for such ailment.

The policy contains the following pertinent provisions:

"8. This policy is issued in consideration of the statements and agreements contained in the application therefor and the payment of premium as herein provided. Copy of the said application is hereto attached or hereon endorsed and is hereby made a part of this contract. No provision of the charter or by-laws of the Company not included herein shall void the policy or be used in any legal proceedings thereunder."

"9. The falsity of any statement in the application, materially affecting either the acceptance of the risk or the hazard assumed hereunder, or made with intent to deceive, shall bar all right to recovery under this policy."

The application was made a part of the contract. It contained these material agreements:

"I hereby apply to the Federal Life Insurance Company for a Non-Cancellable Policy with 3 months exclusion period *to be based on the following answers and agreements and also the answers that I shall make to the company's Medical Examiner in continuation of this application* * * *."

"19. Do you agree that *the falsity of any answer* in this application or any answer made to the Company's Medical Examiner in continuance of this application for a policy *shall bar the right to recover thereunder if such answer is made with intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company."* Answer "Yes".

"I hereby certify that before signing I have read the above statements and answers and find each of them recorded as made by me, *and that each of the answers made by me as stated in Parts I and II of this application, are full, complete and true."*

Were the plaintiff's statements warranties or representations under the law of Missouri?

The contract under consideration belongs to a species which fortunately is rapidly

[1] Pacific Mutual Life Ins. Co. v. Glaser, 245 Mo. 377, 150 S.W. 549, 45 L.R. A.,N.S., 222; Houston v. Metropolitan Life Ins. Co., 232 Mo.App. 195, 97 S.W. 2d 856; Kern v. Supreme Council, etc., 167 Mo. 471, 61 S.W. 252; Burgess v. Pan-American Life Ins. Co., Mo.Sup., 230 S.W. 315.

[2] Grand Lodge v. Massachusetts Bonding & Ins. Co., 324 Mo. 938, 25 S.W.2d 783.

becoming extinct. The more modern practice of greater fairness to the insured and fewer limitations on the liability of the insurer is not exemplified by the provisions of the policy in suit. Such policies, have, however, received fairly recent consideration by the Missouri Courts.

 Where the statements made by the applicant for insurance are expressly made warranties they will be treated as such. Pacific Mutual Life Ins. Co. v. Glaser, supra.

In Pacific Mutual Life Ins. Co. v. Glaser, the agreement was stated in the following language: "I hereby warrant that all the foregoing statements and answers and all those that I make to the company's medical examiner are complete, true, and correct, and, if any such statement or answer is incomplete, untrue, or incorrect, no valid claim shall arise under such policy on account of death or disability occurring within one year from its date."

In the contract in suit the insured used the word "certify" instead of warrant. In other respects the language of this contract is strikingly similar to that in the Pacific Mutual case. Re-arranged for comparison it is:

"I hereby certify that * * * each of the answers made by me * * * are full, complete and true.

"(I) agree that the falsity of any answer * * * shall bar the right to recover thereunder if such answer is made with intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the Company."

While that part of the agreement determining the effect which shall ensue from the falsity of a statement is of more importance in determining whether statements shall be considered warranties or representations than the choice of words used in the assurance of truthfulness, there can be slight, if any, difference in meaning between the word "certify" used in the present contract and "warrant" used in the Pacific Mutual case. Nor can there be any real difference in meaning between the agreement as stated in the case cited that "no valid claim shall arise under the policy" if a statement or answer be false, and the agreement in the policy in suit that a false statement "shall bar the right to recover."

 The rule is well stated in Houston v. Metropolitan Life Ins. Co., 97 S.W.2d loc. cit. 860, as follows: "The rule in this state, as we understand it, is that where material representations made in an application for a policy of life insurance are warranted to be true, or the policy is conditioned upon the truth of the representations, or provides that the falsity of the representations shall avoid the policy, then the representations, if in fact untrue, will avoid the policy, though the representations were innocently made. This is so because such is the contract. The insurer is entitled to stand on the contract as written, and the innocence of the insured in making the representations is a matter of no concern. But where there is no such warranty or provision in the policy a misrepresentation, in order to avoid the policy must have been fraudulently made. This is the rule applicable to contracts generally, and we see no reason why an exception should be made with respect to insurance contracts."

Under these authorities the contract must be construed as making the statements warranties.

 Counsel insists that the theory that plaintiff's statements were made warranties by the contract was not presented by the pleadings and was not advanced by defendant until the close of the evidence, with the result that plaintiff had no opportunity to meet the "unusual and unheard of" position taken by the Court.

The answer set out the pertinent provisions of the contract relating to false statements. It then alleged that certain statements made in the application were false and were known to plaintiff to be false, were made with intent to deceive defendant, and materially affected the acceptance of the risk and the hazard assumed. Nowhere in the answer is found the statement of the legal conclusion that plaintiff's statements were warranties. But the pertinent provisions of the contract from which an appropriate legal conclusion could and would be drawn were alleged. The answer alleging conjunctively that the statements were both false and known to be false was assumed to sufficiently assert the existence of both independent facts. When the provisions of the contract heretofore noted were examined, the question arose in the Court's mind as to whether plaintiff's statements were to be treated as warranties or representations. The authorities heretofore cited, and others, were examined during the course of the trial

and at the conclusion of the evidence counsel were called into Chambers, the authorities on this specific question were discussed, and counsel were advised of the theory upon which the case would be submitted to the jury.

When analyzed, counsel's complaint appears to really be that defendant's counsel lulled them into a feeling of security that the Court's attention would not be directed to the theory of warranty and the authorities relating thereto. If the complaint was directed to a misunderstanding of the factual issues, prompt corrective action would ensue. But relating, as it does, to the fact that this Court accidentally stumbled on to some law that had not been called to its attention, judicial precedents disclose no comparable situation ever having been dealt with and hence no remedy suggested. It may well be assumed that no remedy exists.

From a practical standpoint the complaint is not one over which tears need be shed. Plaintiff's counsel were both able and eminent. No one, to the Court's knowledge, has ever accused either of lack of ability or care in the preparation or presentation of their cases. Such a charge if made by anyone would be listened to, if at all, with much skepticism concerning its justification. Indeed, counsel do not suggest that they were not familiar with the question or the authorities, hence the real issue which they may have been unprepared to meet was not as much a legal issue as it was the unpredictableness of the Court, for which there appears to be no present remedy.

■ Plaintiff's motion for judgment non obstante veredicto must be overruled for at least two reasons. First, plaintiff is not entitled to recover if the answers complained of were false and material. There was an abundance of proof to support an affirmative answer to both questions. Second, even should the Court's construction of the contract be erroneous and the statements be mere representations with the result that they must be shown to have been knowingly and fraudulently made with intent to deceive, there is justification in the proof for an affirmative finding by the jury on that question. Without undertaking to review all of the evidence on the subject, it should be noted that there was evidence that plaintiff had been examined by an eye specialist many years before the application for this insurance was made. At that time his mother was told by the doctor that he was suffering from retinitis pigmentosa. Later, during the last World War he claimed exemption, which was granted, upon the ground that his eyesight was defective. His eyes were examined at that time and later. The conclusion that the condition known to a number was also known to him might well have been drawn from the facts in evidence although he stated that he did not know he had retinitis pigmentosa.

■ Complaint is made that the jury was not instructed to the effect that if the defendant has actual or constructive knowledge that plaintiff had retinitis pigmentosa at the time he stated he did not, plaintiff could recover. Assuming the propriety of such an instruction in a proper case,[3] it should not be given unless the evidentiary facts would support the finding. Absent proof that the examining physician knew or had reason to believe that plaintiff was suffering from retinitis pigmentosa, a waiver will not result. Kirk v. Metropolitan Life Ins. Co., 336 Mo. 765, 81 S.W.2d 333, loc. cit. 339. The evidence in this case was not deemed to be sufficient to support that finding, hence the issue was not submitted.

Plaintiff contends that the charge was erroneous in that it informed the jury that if any one of several statements were false and material he could not recover. That portion of the charge was as follows:

"You will find for the plaintiff, unless you find that the plaintiff had retinitis pigmentosa on January 3, 1928, when the application for this insurance was made; and, second, that, having retinitis pigmentosa he, by his answers to questions in his application for this insurance, stated, either, first, that he did not have and never had had any disease of either eye, or any difficulty with his eyesight; or, second, that he had not within ten years consulted any physician for any disease or difficulty with his eyesight; or, third, that he had never had any serious illness except an appendectomy and herniotomy, and had not been under observation, care or treatment, except for appendicitis and hernia; or, fourth, that Dr. Hart was the last physician consulted by him; or, fifth, that he had no usual medical examiner;

---

[3] Phœnix Mut. Life Ins. Co. v. Harmegnies, 8 Cir., 110 F.2d 20(8).

582

or, sixth, that he had not been in a hospital or sanitarium, asylum, or similar institution, except for appendicitis and a hernia, and if you find such facts, and if you find that such statements, if any, were actually made, and that any of them were false, and that such statements, if any, which were made and were false, misrepresented some matter which actually contributed to the disability for which plaintiff seeks recovery, then you may find that the defense asserted by the defendant has been sustained.

"Unless you find from the greater weight of the evidence that the plaintiff had retinitis pigmentosa on January 3, 1928, when the application was made, then your inquiry need go no further, and your verdict will be for the plaintiff. If you conclude that he did have that disease on that date, and you further find that he made the answers to the questions, which the defendant sets forth, and that those answers, or any of them were false, and that such false answer, if any, misrepresented some matter which actually contributed to the disability for which he now seeks recovery, then you will find for the defendant."

It is plaintiff's contention that (1) it was immaterial whether he consulted a physician within ten years for a disease or difficulty with his eyesight, because there is no such provision in the application; (2) that it was immaterial whether he had been under observation, care or treatment; (3) immaterial who the last physician was that he consulted; (4) immaterial whether he had a usual medical examiner, and; (5) immaterial whether he had been in a hospital, sanitarium or similar institution, because none of these matters could possibly have contributed to the disability for which plaintiff seeks recovery.

■ The question, numbered 5, was asked in the application whether plaintiff had, within ten years, consulted or been treated by a physician for any ailment not included in previous questions. One of the preceding questions was whether he had ever had any "difficulty with eyesight or hearing." The answer was "no." Plaintiff contends [4] that Question 5 did not relate to any difficulty with eyesight because that subject had been included in a previous question and was hence excluded in Question 5. If eyesight was not included in the latter question, the answer to the question was not material under the Missouri Statute.[5] The examining physician had written the answer "No". He testified that the answer "No" was probably his mistake as plaintiff had informed him of being nearsighted and was wearing glasses at the time to correct that condition. But, while plaintiff's counsel were contending that the answer "No" should have been written "Yes" by the examiner, they were also contending that the answer "No" referred to only such minor conditions as nearsightedness which was the only difficulty with his eyesight which plaintiff knew of. Defendant's counsel had stated in effect that defendant was not concerned about whether the answer should have been "Yes" or "No" if it referred only to such conditions as nearsightedness, but was contending that plaintiff had the "ailment or disease" retinitis pigmentosa at the time, and had stated that he did not. By plaintiff's construction of "difficulty with eyesight" that question did not include such ailments or diseases as retinitis pigmentosa and the latter disease was included in the purview of Question 5. Thus plaintiff was in effect saying that he had not falsely stated that he did not have retinitis pigmentosa because he had in fact answered "Yes" to that question, and at the same time he was asserting that when he said "Yes" he did not mean to say he had retinitis pigmentosa. The question was, therefore, material under defendant's theory and one of plaintiff's hypotheses.

The contention that the other questions, heretofore noted, were immaterial may be considered together.

By reason of the Missouri Statute, Section 5843, R.S.Mo.1939, Mo.R.S.A. § 5843, heretofore set out in the margin, "no misrepresentation * * * shall be deemed material, or render the policy void, unless

[4] Page 16 of his brief.

[5] Section 5843, R.S.Mo.1939, Mo.R.S.A. § 5843.

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizen of this state, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury. R.S.1929, § 5732."

the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable." Plaintiff contends that his statements that he had not been under observation, care or treatment, that he incorrectly named the last physician he had consulted, that he had no usual medical examiner, and that he had not been in a hospital, sanitarium or similar institution, were not matters misrepresented which actually contributed to his blindness since it was the disease and not the consultations or hospitalization which caused the disability. Security Life Ins. Co. v. Brimmer, 8 Cir., 36 F.2d 176(8); Keller v. Home Life Ins. Co., 198 Mo. 440, 95 S. W. 903, 904; Emery v. New York Life Ins. Co., Mo.App., 257 S.W. 162, and Houston v. Metropolitan Life Ins. Co., 232 Mo.App. 195, 97 S.W.2d 856, are cited in support of the contention.

Security Life Ins. Co. v. Brimmer was based on Keller v. Home Life Ins. Co. In the latter case there was no request for an instruction (necessary under the state practice), as to whether the insured had ever been treated by another physician. The Court held that therefore the defendant was in no position to complain. In that case defendant was contending that the trial court should have directed a verdict by instructing the jury that the insured's statement that he had not been treated by physicians when he had should avoid the policy. The Court stated that while the diseases for which the insured was treated by the physicians might have contributed to his death, it was unable to understand how a false statement as to the mere fact as to whether he had consulted or had been treated by other physicians, could do so. But the Court held that the case was for the jury under the Statute (§ 5843, supra) on the question of materiality.

In Emery v. New York Life Ins. Co., the Springfield Court of Appeals by a divided court, squarely held that a misrepresentation that the insured had not consulted a physician for the disease which caused death was not material under the Statute because it was not the consultation but the disease which caused death. Both the majority and dissenting opinions cited Keller v. Home Life Ins. Co., as supporting authority. But the Emery case was certified to the Missouri Supreme Court and reversed. Emery v. New York Life Ins. Co., 316 Mo. 1292, 295 S.W.

571. In a separate concurring opinion the Missouri Supreme Court held that the effect of the false answer was to conceal the existence of the cause of death "and so actually contributed to the contingency or event on which the policy was to become due and payable; that is, the death of the insured." 295 S.W. loc. cit. 575.

The Houston case, although not citing the Emery case, follows the principal announced by the Missouri Supreme Court. The defendant was contending that representations that the insured had not consulted a physician and had not had treatment in a hospital, were necessarily fraudulent and a bar to recovery. The Court pointed out that if the insured did not have cancer (which caused her death), at the time she made the representation, it was not material under the Statute because it did not operate to conceal the condition which contributed to her death. The broad implication is that if she did have cancer and the answer tended to conceal that fact, the answer would have been material.

The case at bar is similar on the facts to the Emery case. Here the insured's blindness was alleged to have been caused by retinitis pigmentosa. It was contended by defendant that he had it at the time the statements were made that he had not consulted a physician or been in a hospital. The previous consultations and hospitalization testified to were for an eye ailment. If the jury found that plaintiff had retinitis pigmentosa on the date of the application, further found that he concealed previous examinations and hospitalization the disclosure of which would have revealed that he had that disease, then the concealment would have been a defense. The effect of the Statute on general questions such as those here involved is that, after loss, the Statute restricts and narrows the materiality of the general question to matters which relate directly to the cause of the loss for which recovery is sought. By requiring the jury to find that a misrepresentation must have misrepresented some matter which actually contributed to the disability for which plaintiff sought recovery any misrepresentations which did not conceal the existence of retinitis pigmentosa were clearly excluded, since the latter disease was the cause of disability.

The motion for new trial and the motion for judgment non obstante veredicto are overruled.