Ruth E. LEHMAN and Eldon W. Lehman, Appellants,

v.

Ned A. HUG, Respondent.

No. WD 31727.

Missouri Court of Appeals, Western District.

March 2, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1981.

Timothy C. Harlan, Boonville, for appellants.

Ronald R. McMillin of Carson, Monaco, Coil, Riley & McMillin, P. C., Jefferson City, for respondent.

Before MANFORD, P. J., DIXON and NUGENT, JJ.

MANFORD, Presiding Judge.

This is an original action for damages for personal injury. This appeal is from the entry of summary judgment. The judgment is reversed and the cause remanded.

Review of this case is upon the whole record, and the only determination to be made is whether there existed any genuine material issue of fact precluding summary judgment. See *City of Kirkwood v. City of Sunset Hills*, 589 S.W.2d 31 (Mo.App.1979).

In the instant proceedings, summary judgment was entered upon the pleadings, interrogatories and depositions of the parties. One point of error is presented, alleging the trial court erred in entering summary judgment because there existed genuine material issues of fact regarding the fact that (a) appellant (Ruth Lehman) could not see the ice under the snow where she fell and respondent testified that for many years, he had trouble with rain and snow blowing under the latticework onto the porch floor; (b) the deposition evidence showed only generally snowy conditions in the community with no evidence there was ice beneath the snow; and (c) there was a difference in the testimony concerning the arrival of the parties at respondent's office.

On March 23, 1974, appellant Ruth Lehman had an appointment with respondent, Ned A. Hug, who was a practicing chiropractor in California, Missouri. Snow had fallen through the previous evening and night and it was snowing when the Lehmans left their home for Mrs. Lehman's appointment. The appointment was scheduled for 9:00 a. m.

Dr. Hug's office was in the front area of a residence and he was responsible for maintenance of the building. The home

(office) had a front entrance for patients which was reached via a sidewalk from the street in front. In addition, patients could enter the office from a driveway on the south side of the house. There was a covered walkway from the south drive to the house. This walkway was a ramp suitable for wheelchair use. The covering over this walkway was a porch roof extending four feet beyond the walkway over the drive. In addition, this cover included latticework which covered the west side of the porch. This roof area had been added in 1963 to keep the walkway dry. Respondent testified that from 1963–74, snow or rain would frequently blow (during a storm) onto the walkway beneath the latticework. Respondent could not recall any ice forming at this point or as a result of the roof or latticework.

The Lehmans testified they arrived for the appointment at 8:55 a. m. It was snowing when they arrived. Mrs. Lehman was let out of the family truck and proceeded three or four steps on the walkway when she slipped and fell. She later stated that she could see snow on the walkway, but not ice.

Dr. Hug testified that he arrived at his office about 8:30 a. m., entered the office by a rear entrance, took off his coat and boots, and walked to the front door where he observed, through the window, that Mrs. Lehman had fallen.

An employee of Dr. Hug's testified that she arrived at work at approximately 8:15 a. m. and said that Mrs. Lehman fell sometime between 8:00 a. m. and 8:30 a. m. This employee testified that Dr. Hug was in the adjusting room when Mrs. Lehman fell.

In entering summary judgment, the trial court concluded that Mrs. Lehman was an invitee and that since the danger confronting Mrs. Lehman was obvious, respondent owed no duty to protect her. The conclusion by the trial court was that the parties were in an equal position and that Mrs. Lehman was in a position to protect herself from the ice under the snow.

Dr. Hug had continuous trouble with rain and snow blowing onto the walkway, although the roof and latticework were installed to keep the walkway dry. The question of whether or not Dr. Hug could have discovered ice on the walkway as a result of the blowing of snow thereon is a dispute in the evidence. He testified he arrived one-half hour prior to the Lehmans' arrival. In addition, he testified he was getting ready to clean the walk at the time of Mrs. Lehman's fall. He further testified that the Lehman's arrived almost one-half hour prior to the time for Mrs. Lehman's appointment. The Lehmans testified that their arrival was just five minutes prior to the 9:00 a. m. appointment. It is not for this court to resolve the veracity, truthfulness or correctness of this testimony, and it suffices to state that because of this testimony, a genuine material issue of fact existed.

■ On March 23, 1974, a generally snowy condition existed throughout the community. There was no evidence that ice existed beneath the snow, except at the location of the fall. The evidence shows the snow was obvious, but not the ice. The factual question to be asked is whether, at the location of the fall, the conditions existing at that point were in fact those existing throughout the community. As has been observed by our courts, the existence of generally snowy conditions does not create an inference that there is a general condition of ice beneath the snow which automatically precludes recovery, see *Watson v. McGraw-Hill, Inc.*, 507 S.W.2d 366 (Mo. 1974).

■ The evidence upon the record shows the existence of genuine material issues of fact concerning the general conditions of the community and asks whether those were the same conditions existing at the location of Mrs. Lehman's fall. The evidence also shows that there existed a genuine material issue of fact concerning (a) the arrival of the parties relative to the hour of the appointment (9:00 a. m.) and (b) what respondent was preparing to do in regard to the cleaning of the walkway. The evidence also showed the existence of a general material issue of fact concerning the porch

**734**

covering and the latticework relative to whether that protective covering contributed to the conditions producing Mrs. Lehman's fall.

A genuine issue of fact precluding entry of summary judgment exists whenever there is the slightest doubt as to the facts, see *Cooper v. Yellow Freight System, Inc.,* 589 S.W.2d 643 (Mo.App.1979), see also *American National Bank, Etc., v. White River Service Corp.,* 586 S.W.2d 454 (Mo. App.1979). Because of the severe nature of summary judgment, review awards to the party against whom the judgment was entered every accord, see *Massey v. Hamilton,* 583 S.W.2d 273 (Mo.App.1979).

The evidence herein shows doubt concerning the facts referenced above, thus precluding summary judgment. The factual determination should have been made by the trier of fact.

Concurrent with its entry of summary judgment, the trial court concluded that appellants were barred from recovery because Mrs. Lehman was guilty of contributory negligence as a matter of law. It has been held that the courts will not find contributory negligence as a matter of law where dangerous conditions resulting from ice were not so glaring and obvious that a reasonably prudent person would have avoided the area, see *Burch v. Moore's Super Market, Inc.,* 397 S.W.2d 590 (Mo.1965) and *Shannon v. Washington University,* 575 S.W.2d 235 (Mo.App.1978). It cannot be concluded that the evidence herein supports a conclusion that the conditions then and there existing were so glaring and obvious that a reasonably prudent person would have avoided the area, and upon such evidence, this court finds that it was error to have concluded that Mrs. Lehman was guilty of contributory negligence as a matter of law.

For the foregoing reasons, the judgment herein is reversed and the cause remanded.

All Concur.